1  Julianna M. Simon (SBN 307664)
   BLANK ROME LLP
2  2029 Century Park East⎪6th Floor
   Los Angeles, CA 90067
3  Telephone:  424.239.3400
   Facsimile:  424.239.3434
4  Email: jmsimon@blankrome.com

5  Daniel P. Watkins * (VA Bar No. 84592)
   CLARE LOCKE LLP
6  10 Prince Street
   Alexandria, VA 22314
7  Telephone: (202) 628-7400
   Email: daniel@clarelocke.com
8  * *Pro Hac Vice* Application Forthcoming

9  *Attorneys for Applicant Legatum Limited*

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12  *In re Ex Parte* Application of          MISCELLANEOUS CASE NO.:

13  LEGATUM LIMITED,                         3:21-mc-80032

14  Applicant,                               **LEGATUM'S MEMORANDUM OF LAW
                                             IN SUPPORT OF ITS *EX PARTE*
15                                           APPLICATION FOR AN ORDER
    For an Order Pursuant to 28 U.S.C. § 1782  PURSUANT TO 28 U.S.C. § 1782
    Granting Leave to Obtain Discovery       GRANTING LEAVE TO OBTAIN
16  for Use in Foreign Proceedings           DISCOVERY FOR USE IN FOREIGN
                                             PROCEEDINGS**
17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

TABLE OF CONTENTS ............................................................................................................. i

3

TABLE OF AUTHORITIES ...................................................................................................... ii

4

INTRODUCTION ..................................................................................................................... 1

5

FACTUAL BACKGROUND ..................................................................................................... 2

6

      A.    Legatum's Contracts with Its Employees. .............................................................. 2

7

      B.    Three Former Legatum Employees Violate Their Contractual Non-Disparagement and Confidentiality Duties to Legatum by Anonymously Publishing False and Disparaging Reviews on Glassdoor.com. ............................. 3

8

9

      C.    Legatum Asks Glassdoor to Remove the Disparaging Reviews and Provide Identifying Information Regarding the Persons Who Posted Them, But Glassdoor Refuses. .............................................................................................. 5

10

11

      D.    This Application Seeks Evidence Necessary for Legatum to Proceed with Its U.K. Litigation Against the Former Employees Who Posted the Disparaging Reviews. ............................................................................................................. 6

12

13

ARGUMENT ............................................................................................................................ 6

14

I.      28 U.S.C. § 1782 Broadly Allows Discovery in Aid of Foreign Proceedings. .................... 6

15

II.     Legatum's Application Easily Satisfies Section 1782's Statutory Requirements. ............. 7

16

III.    The Supreme Court's Discretionary *Intel* Factors All Weigh in Favor of Granting Legatum's Application. ............................................................................................... 8

17

      A.    The First *Intel* Factor Is Satisfied:  Glassdoor Is Not a Party to the Foreign Proceedings, and Therefore the Foreign Proceedings Cannot Compel Glassdoor to Provide Discovery. ................................................................................ 9

18

19

      B.    The Second *Intel* Factor Is Satisfied:  The U.K. Court Will Accept, Not Reject, Assistance from Discovery Under Section 1782. ........................................ 9

20

21

      C.    The Third *Intel* Factor Is Satisfied: Legatum's Request Does Not Attempt to Circumvent Foreign Proof-Gathering Restrictions. .............................................. 10

22

      D.    The Fourth *Intel* Factor Is Satisfied: Legatum's Request Is Not Unduly Burdensome. ....................................................................................................... 11

23

CONCLUSION ........................................................................................................................ 12

24

FILER ATTESTATION .......................................................................................................... 14

25

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF LEGATUM'S *EX PARTE* § 1782 APPLICATION

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
   793 F.3d 1108 (9th Cir. 2015)..................................................................................8

5

*Digit. Shape Techs., Inc. v. Glassdoor, Inc.*,
   No. 16-mc-80150, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) ............................12

6

*Franklin v. Madden*,
   586 F. App'x 431 (9th Cir. 2014) .............................................................................11

7

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
   633 F.3d 591 (7th Cir. 2011)......................................................................................9

8

9

*HRC-Hainan Holding Co. v. Yihan Hu*,
   No. 19-mc-80277, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020) .........................7, 11

10

*In re Apple Retail UK Ltd.*,
   No. 20-mc-80109, 2020 WL 3833392 (N.D. Cal. July 8, 2020) ......................1, 9, 12

11

12

*In re Application for Appointment of a Comm'r re Req. for Judicial Assistance
   for the Issuance of Subpoena Pursuant to 28 U.S.C. 1782*,
   No. 11-cv-80136, 2011 WL 2747302 (N.D. Cal. July 13, 2011) ....................9, 11, 12

13

*In re Application of Guy*,
   No. 19-mc-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004)...........................10, 11

14

*In re Application of Joint Stock Co. Raiffeinsenbank*,
   No. 16-mc-80203, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ..............................11

15

16

*In re Application of Michael Wilson & Partners, Ltd.*,
   No. 06-cv-2575, 2007 WL 2221438 (D. Colo. July 27, 2007) ...........................10, 11

17

*In re Application of Rainsy*,
   No. 16-mc-80258, 2017 WL 528476 (N.D. Cal. Feb. 9, 2017) ..................................8

18

*In re Ex Parte Application of Digital Shape Techs., Inc.*,
   No. 16-mc-80150, 2016 WL 3913670 (N.D. Cal. July 20, 2016) ...............................7

19

20

*In re Ex Parte Motorola Mobility, LLC*,
   No. 12-cv-80243, 2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) .........................9, 10

21

*In re IKB Deutsche Industriebank AG*,
   No. 09-cv-7852, 2010 WL 1526070 (N.D. Ill. Apr. 8, 2010) .............................10, 11

22

23

*In re Letters Rogatory From Tokyo Dist. Prosecutor's Office*,
   16 F.3d 1016 (9th Cir. 1994).....................................................................................11

24

*In re Letters Rogatory from Tokyo Dist.*,
   539 F.2d 1216 (9th Cir. 1976)......................................................................................1

25

26

27

28

*In re Republic of Ecuador*,
  No. 10-mc-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010)...........................................1, 7

*In re Varian Med. Sys. Int'l AG*,
  No. 16-mc-80048, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) .......................................9, 10

*In re Yasuda*,
  No. 19-mc-80156, 2020 WL 759404 (N.D. Cal. Feb. 14, 2020).................................................8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)................................................................................6, 7, 8, 9, 10, 11

*IPCom GMBH & Co. KG v. Apple Inc.*,
  61 F. Supp. 3d 919 (N.D. Cal. 2014) .........................................................................1

*London v. Does*,
  279 F. App'x 513 (9th Cir. 2008) ..............................................................................9

*Siemens AG v. W. Digit. Corp.*,
  No. 13-cv-1407, 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ...................................9

**Statutes**

28 U.S.C. § 1782 ...............................................................................................1, 6, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Applicant Legatum Limited ("Legatum") submits this Memorandum of Law in support of its *Ex Parte*[1] Application for an Order pursuant to 28 U.S.C. § 1782 requesting third-party discovery from Glassdoor, Inc. ("Glassdoor") to aid foreign litigation in the United Kingdom. Specifically, Legatum's application requests discovery for a U.K. breach-of-contract case against three former employees who posted disparaging "reviews" on the website Glassdoor.com (which is operated by Glassdoor), thereby violating the former employees' contractual non-disparagement and confidentiality obligations to Legatum.

Legatum files this Section 1782 Application as a last resort because critical evidence necessary for Legatum's U.K. action is only available in this jurisdiction and the U.K. court would be unable to compel its production. By way of background, Legatum alleges that three former employees posted "reviews" on Glassdoor.com that breached contracts between the former employees and Legatum. But because Glassdoor allowed the former employees to post the reviews anonymously, Glassdoor—and only Glassdoor—possesses documents and information that would reveal identifying information about the former employees, such as their email addresses and the IP addresses they used to post the disparaging reviews. Additionally, Legatum requests that Glassdoor be required to produce documentation concerning the number of visitors who have viewed or interacted with the reviews. Legatum has filed its Application to obtain limited discovery that would reveal that information which is critical to Legatum's lawsuit in the United Kingdom.

As explained below, Legatum's Application satisfies all Section 1782 statutory requirements, and all discretionary factors that courts consider in evaluating Section 1782 Applications weigh heavily in favor of granting Legatum's Application. As such, the Court should grant Legatum's Application.

---

[1] "Applications brought pursuant to 28 U.S.C. § 1782 typically are considered on an *ex parte* basis, since 'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *In re Apple Retail UK Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8, 2020) (quoting *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014); *see also In re Republic of Ecuador*, No. 10-mc-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010); *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976).

1

## **FACTUAL BACKGROUND**

2

### A.    **Legatum's Contracts with Its Employees.**

3      Legatum and its leadership have worked diligently over many years to earn their reputation

4    as a leading investment group that prioritizes principles over profits.   Since its founding in

5    December 2006, as part of its normal operations, Legatum has entered into multiple contracts with

6    each of its employees that contain binding confidentiality and non-disparagement obligations.

7    (Vickers Decl. ¶ 3 n.1.)

8      The first of these contracts is the **Global Employment Agreement**.  (Vickers Decl. ¶ 4.)

9    As relevant here, the Global Employment Agreement contains the following non-disparagement

10    clause:

11          5.1    You [employee] represent and warrant that ...

12          5.1.4   at all times (including for the avoidance of all doubt, following the Date of
            Termination) you shall refrain from making any representations or statements which
13          impairs, impugns, denigrates, disparagers or negatively reflects upon the name,
            reputation, good standing or business interests of Legatum, its management,
14          principals or employees.[2]

15    (*Id.*)    The Global Employment Agreement, in Paragraph 6, further incorporates a

16    Confidentiality Agreement (*see infra*) and provides in Paragraph 19.1 that "[t]he obligations set

17    forth herein will survive, and remain binding and enforceable, notwithstanding any termination of

18    [an employee's] employment."  (*Id.* ¶¶ 5, 6.)  In addition, the Global Employment Agreement

19    provides that in the event of breach, "Legatum may bring an action or special proceeding in any

20    court of competent jurisdiction sitting in London."  (*Id.* ¶ 7.)  By entering into the Global

21    Employment Agreement, an employee "agree[s] that Legatum will be entitled to injunctive relief

22    ... for any actual or threatened violations of any of [his obligations under the contract] in addition

23    to any other remedies it may have."  (*Id.* ¶ 8.)

24

25

---

26    [2] Paragraph 16 of the Global Employment Agreement further forbids employees from "engaging
      in any act or making any statement which impairs, impugns, denigrates, disparages, or negatively
27    reflects upon the name, reputation or business interests of Legatum, its management or principals;
      or [] engaging in any conduct of any nature detrimental to or reflecting negatively on Legatum."
28    (*Id.* ¶ 9.)

The second contract that all Legatum employees execute is the **Confidentiality Agreement** (the "**Deed**").  (*Id.* ¶ 10.)  As relevant here, the Deed contains the following clause:

> 2.2  I will not ... post information on any web-site or otherwise publish information concerning [Legatum or its management].

(*Id.* ¶ 11.)  The Deed further provides that Legatum "shall be entitled to injunctive relief including restraining orders and temporary and permanent injunctions to enforce this Deed."  (*Id.* ¶ 12.)  The Deed "shall be governed by and construed in accordance with English Law," and the employee-signatory "submit[s] to the non-exclusive jurisdiction of the English courts" to litigate any disputes arising out of the Deed.  (*Id.* ¶ 13.)

In addition, when an employee departs Legatum, the company offers them a comprehensive and valuable severance agreement, detailed in the **Severance Agreement**.  (Vickers Decl. ¶ 14.)[3] Every employee who has left Legatum since 2011[4] has executed the Severance Agreement, which contains the following non-disparagement clause:

> [The former employee] further agree[s] not to make any negative, derogatory or disparaging comments about [Legatum or its representatives].

(*Id.*)  By entering into the Severance Agreement, the employee-signatory further "agree[s] to comply with all pre-existing confidentiality ... obligations" and "ratif[ies] and reaffirm[s]" his or her confidentiality obligations in the Deed.  (*Id.* ¶ 15.)

### B.   Three Former Legatum Employees Violate Their Contractual Non-Disparagement and Confidentiality Duties to Legatum by Anonymously Publishing False and Disparaging Reviews on Glassdoor.com.

On May 6, 2015, a "Former Employee - Anonymous Employee" who "worked at Legatum full-time" published a review on Glassdoor.com (on Legatum's Glassdoor profile) titled "Worst professional experience" (the "Worst Professional Experience Review").  (*Id.* ¶ 16.)  The Worst

---

[3] The Global Employment Agreement, the Deed, and the Severance Agreement are collectively referred to herein as the "Agreements."

[4] Glassdoor only permits former employees to publish reviews of former employers from the four years preceding their review.  Because the reviews at issue in this case were published in May 2015, December 2017, and January 2018, the authors of those reviews have represented that they ceased employment at Legatum no earlier than May 2011, December 2013, and January 2014, respectively.

Professional Experience Review contains numerous statements that breach the confidentiality, non-disclosure, and non-disparagement provisions in the Global Employment Agreement, the Deed, and the Severance Agreement.  These statements include accusations that Legatum is "opaque [and] cliquish," that Legatum has "very high turnover," and that Legatum provides a bad "professional experience."  (*Id.* ¶ 17.)  The Worst Professional Experience Review makes clear that the former employee "Doesn't Recommend" Legatum as an employer and rates Legatum 1.0 out of 5.0 stars.  The Worst Professional Experience Review plainly "impairs, impugns, denigrates, disparages [and] negatively reflects upon" Legatum, in direct violation of each of the Agreements.  (*Id.*)

On December 17, 2017, a "Former Employee - Anonymous Employee" who "worked at Legatum full-time for less than a year" published a review on Glassdoor.com (on Legatum's Glassdoor profile) titled "It's not what you get, it's who you become" (the "It's Not What You Get Review").  (*Id.* ¶ 16.)  The It's Not What You Get Review similarly contains numerous statements that breach the confidentiality, non-disclosure, and non-disparagement provisions described in the Global Employment Agreement, the Deed, and the Severance Agreement.  These statements include accusations that Legatum represents that it emphasizes a "team" mentality contrary to the truth ("[t]here is much less emphasis on 'team' than the impression I had prior to joining"); that "[s]taff turnover is very high" at Legatum; that Legatum's Chairman is not involved (or is barely or insufficiently involved) with the company ("[t]he Chairman['s] ... involvement is less and less"); and that "the pre 2017 reviews are more representative of the Legatum I experienced," which contain numerous false and disparaging statements about Legatum that the It's Not What You Get Review incorporates and adopts.  (*Id.* ¶ 18.)  The It's Not What You Get Review rates Legatum 1.0 out of 5.0 stars.  (*Id.*)

On January 2, 2018, a "Former Employee - Anonymous Employee" who "worked at Legatum full-time" published a review on Glassdoor.com (on Legatum's Glassdoor profile) titled "High staff turnover" (the "High Staff Turnover Review").  (*Id.* ¶ 16.)  The High Staff Turnover Review also contains a number of statements that breach the confidentiality, non-disclosure, and non-disparagement provisions in the Global Employment Agreement, the Deed, and the Severance Agreement.  These statements include accusations that Legatum has "[h]igh staff turnover for all

1   the reasons on the other one star reviews" on Glassdoor.com, which themselves contain numerous

2   false and disparaging statements about Legatum that the High Staff Turnover Review incorporates

3   and adopts; that there are "some lovely people working there [at Legatum] (non-management),"

4   thereby stating and implying that Legatum's management are bad people; and that "[v]ery long

5   hours and weekends / evenings are the norm, not just when a deadline is due."  (*Id.* ¶ 19.)  The

6   review makes clear that the former employee "Doesn't Recommend" Legatum as an employer and

7   rates Legatum 1.0 out of 5.0 stars.  (*Id.*)

8        The Worst Professional Experience Review, It's Not What You Get Review, and High Staff

9   Turnover Review are referred to collectively herein as the "Disparaging Reviews."

10       Notably, although the former Legatum employees published the Disparaging Reviews

11   anonymously, the pool of potential persons who could have posted them is limited.  First, the

12   authors of the Disparaging Reviews are self-described "Former Employee[s]" who "worked at

13   Legatum full-time," one of whom "worked at Legatum full-time for less than a year."  (*See id.*

14   ¶¶ 17-19.)  Second, Glassdoor's Terms of Use allow only current and former employees (who

15   worked for their former employer in the preceding four years) to post reviews, and Glassdoor would

16   have been required to remove the Disparaging Reviews as violations of its Terms of Use if they

17   were not published by a former (or current) employee—but Glassdoor has refused to do so.

18   (*See infra*).

19       **C.    Legatum Asks Glassdoor to Remove the Disparaging Reviews and Provide
20            Identifying Information Regarding the Persons Who Posted Them, But
             Glassdoor Refuses.**

21       After discovering the Disparaging Reviews, Legatum (through counsel) sent letters to

22   Glassdoor asking it to remove the Disparaging Reviews from its website and to provide Legatum

23   with information (including the email address and IP address) identifying the persons who posted

24   them.  (Watkins Decl. ¶ 6.)  In support of its request, Legatum explained that it had entered into

25   binding contracts—the Global Employment Agreement, the Deed, and the Severance Agreement—

26   with all of its current and former employees, and that those contracts contain binding non-

27   disparagement, confidentiality, and non-disclosure provisions that the former employee breached

28   by posting the Disparaging Review.  (*Id.*)  Legatum even provided redacted copies of those

1  contracts to Glassdoor and explained how the Disparaging Reviews also violated Glassdoor's

2  Terms of Use.  (*Id.*)  Glassdoor, however, refused to remove the Disparaging Reviews and refused

3  to provide any information about the persons who posted them.  (*Id.* ¶ 7.)[5]

4  **D.**  **This Application Seeks Evidence Necessary for Legatum to Proceed with Its**
       **U.K. Litigation Against the Former Employees Who Posted the Disparaging**
5       **Reviews.**

6  Legatum is preparing to file actions for breaches of contracts—specifically, breaches of the

7  Global Employment Agreement, the Deed, and the Severance Agreement—in Her Majesty's High

8  Court of Justice in London, United Kingdom, against its former employees who posted the

9  Disparaging Reviews.  (Vickers Decl. ¶¶ 22, 25.)  In order to do so, however, Legatum must first

10  obtain information—such as the email account and IP address—identifying the former employees

11  responsible for posting the Disparaging Reviews.  Because Glassdoor is the only entity that holds

12  this information—and because Glassdoor has refused Legatum's request to voluntarily provide it—

13  third-party discovery from Glassdoor is necessary.  (*Id.* ¶¶ 24-25.)

14  <u>**ARGUMENT**</u>

15  **I.**  **28 U.S.C. § 1782 Broadly Allows Discovery in Aid of Foreign Proceedings.**

16  28 U.S.C. § 1782 "is the product of congressional efforts, over the span of nearly 150 years,

17  to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp.*

18  *v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  And over time, Congress has

19  consistently and "substantially broadened the scope of assistance federal courts could provide for

20  foreign proceedings."  *Id.* at 247-48.

21  As relevant here, Section 1782 provides:

22  The district court of the district in which a person resides or is found may order him
     to give his testimony or statement or to produce a document or other thing for use
23  in a proceeding in a foreign or international tribunal ... The order may be made ...
     upon the application of any interested person and may direct that the testimony or
24  statement be given, or the document or other thing be produced[.]

25  28 U.S.C. § 1782(a).  Thus, Section 1782 authorizes federal courts to grant an application for

26

27  _____

28  [5] A copy of the correspondence between Legatum and Glassdoor is attached as **Exhibit 2** to the
     Watkins Declaration.

discovery as long as three statutory requirements are satisfied: **(1)** the person from whom discovery is sought resides or is found in the district of the district court where the application is made; **(2)** the discovery is for use in a proceeding before a foreign tribunal; and **(3)** the application is made by an interested person. *Id.*; *In re Republic of Ecuador*, 2010 WL 3702427, at *2. "Once those three statutory requirements are met, a district court has wide discretion to grant discovery under [Section] 1782." *HRC-Hainan Holding Co. v. Yihan Hu*, No. 19-mc-80277, 2020 WL 906719, at *3 (N.D. Cal. Feb. 25, 2020).

In exercising its discretion to grant discovery, district courts consider four factors identified by the Supreme Court in *Intel*: **(1)** whether the person from whom discovery sought is a participant in the foreign proceeding; **(2)** the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign government to U.S. federal court judicial assistance; **(3)** whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and **(4)** whether the request is unduly burdensome. *Intel*, 542 U.S. at 264-65.

As explained below, because Legatum's application easily satisfies all three statutory Section 1782 requirements and all four discretionary factors, the Court should grant Legatum's application for limited discovery.

## II. Legatum's Application Easily Satisfies Section 1782's Statutory Requirements.

Legatum's Application for narrow subpoenas to Glassdoor easily satisfies Section 1782's three statutory requirements.

*First*, Glassdoor resides or is found in this district because it is headquartered and has its principal offices in Marin County, California, which is in this district. (Watkins Decl. ¶ 6.) Under settled law, "[a] business entity is 'found' in the judicial district where it has its principal place of business." *E.g.*, *HRC-Hainan Holding*, 2020 WL 906719, at *3; *In re Ex Parte Application of Digital Shape Techs., Inc.*, No. 16-mc-80150, 2016 WL 3913670, at *3 (N.D. Cal. July 20, 2016) (authorizing discovery from Glassdoor under Section 1782 and recognizing that "Glassdoor's principal place of business is ... within the Northern District of California"); *In re Application of*

1    *Rainsy*, No. 16-mc-80258, 2017 WL 528476, at *2 (N.D. Cal. Feb. 9, 2017).[6]

2       **Second**, Legatum's Application seeks discovery for use in a proceeding before a foreign

3 tribunal, namely, Her Majesty's High Court of Justice in London, United Kingdom.  As the

4 Supreme Court has explained, the requisite foreign proceeding "need not be 'pending' or

5 'imminent'"; rather, "the 'proceeding' for which discovery is sought under [Section] 1782(a)" need

6 only be "in reasonable contemplation."  *Intel*, 542 U.S. at 247; *accord In re Yasuda*, No. 19-mc-

7 80156, 2020 WL 759404, at *4 (N.D. Cal. Feb. 14, 2020).  Here, as described above, Legatum

8 intends to file actions for breaches of contracts—specifically, breaches of contractual non-

9 disparagement and confidentiality clauses in the Global Employment Agreement, the Deed, and

10 the Severance Agreement—in Her Majesty's High Court of Justice in London, United Kingdom,

11 upon obtaining discovery from Glassdoor revealing the identities of the former employees who

12 breached those contracts by posting the Disparaging Reviews.  (Vickers Decl. ¶¶ 22, 25.)  As such,

13 Legatum's breach-of-contract actions are "in reasonable contemplation" and this requirement is

14 satisfied.

15       **Third**, Legatum, as the plaintiff in the foreign actions, qualifies as an "interested party"

16 entitled to seek discovery under Section 1782.  As the Supreme Court has explained, "[n]o doubt

17 litigants are included among, and may be the most common example of, the 'interested person[s]'

18 who may invoke [Section] 1782."  *Intel*, 542 U.S. at 256; *see also Akebia Therapeutics, Inc. v.*

19 *FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015) ("An 'interested person' seeking to invoke the

20 discovery mechanism set forth under [Section] 1782 may include 'not only litigants before foreign

21 or international tribunals, but also ... any other person [who] ... merely possess[es] a reasonable

22 interest in obtaining [judicial] assistance.'" (quoting *Intel*, 542 U.S. at 256-57)).

23 **III.    The Supreme Court's Discretionary *Intel* Factors All Weigh in Favor of Granting**
**Legatum's Application.**

24

25       All of the discretionary *Intel* factors likewise demonstrate that the Court should grant

26 [6] Indeed, Glassdoor's own Terms of Use provide that its users must "agree that all [] subpoenas and
27 discovery proceedings arising from such subpoenas shall be issued from, brought and resolved exclusively in the state courts located within Marin County, California or the federal courts in the
28 Northern District of California." (Glassdoor, Terms of Use § 13, https://www.glassdoor.com/about/terms.htm.)

1   Legatum's Application for limited discovery from Glassdoor.

2         **A.**    **The First *Intel* Factor Is Satisfied:  Glassdoor Is Not a Party to the Foreign Proceedings, and Therefore the Foreign Proceedings Cannot Compel Glassdoor to Provide Discovery.**

3

4         The first *Intel* factor weighs in favor of discovery in this case because Glassdoor is not

5   involved in the foreign proceedings.  As the Supreme Court has explained, "nonparticipants in [a]

6   foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence,

7   available in the United States, may be unobtainable absent [Section] 1782(a) aid."  *Intel*, 542 U.S.

8   at 264; *see also, e.g.*, *London v. Does*, 279 F. App'x 513, 515 (9th Cir. 2008) (granting application;

9   explaining that "[a]bsent this [Section 1782] discovery, the evidence sought may be unattainable

10   [in] the [foreign] court while it is within the district court's jurisdiction and accessible in the United

11   States."); *In re Ex Parte Motorola Mobility, LLC*, No. 12-cv-80243, 2012 WL 4936609, at *2 (N.D.

12   Cal. Oct. 17, 2012) (same); *In re Application for Appointment of a Comm'r re Req. for Judicial*

13   *Assistance for the Issuance of Subpoena Pursuant to 28 U.S.C. 1782*, No. 11-cv-80136, 2011 WL

14   2747302, at *5 (N.D. Cal. July 13, 2011).

15         Here, Glassdoor will not be a participant in or party to Legatum's breach-of-contract actions

16   against its former employees in the United Kingdom.  As such, the U.K. court would be unable to

17   compel Glassdoor (a U.S. corporation) to produce discovery, rendering this Application the only

18   mechanism through which Legatum can obtain information necessary to its U.K. lawsuits.  This

19   factor thus weighs heavily in favor of granting Legatum's Application.

20         **B.**    **The Second *Intel* Factor Is Satisfied:  The U.K. Court Will Accept, Not Reject, Assistance from Discovery Under Section 1782.**

21

22         The second *Intel* factor—the nature of the foreign tribunal, the character of the proceedings

23   abroad, and the receptivity of the foreign government to U.S. federal court judicial assistance—

24   weighs in favor of discovery where, as here, there is no "'authoritative proof that a foreign tribunal

25   would *reject* evidence obtained with the aid of Section 1782.'"  *Siemens AG v. W. Digit. Corp.*,

26   No. 13-cv-1407, 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013); *accord In re Apple Retail UK*

27   *Limited*, 2020 WL 3833392, at *3.  Moreover, in evaluating this factor, courts must "err on the side

28   of permitting discovery."  *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048, 2016 WL 1161568,

- 9 -

at *4 (N.D. Cal. Mar. 24, 2016) (citing *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (reversing denial of Section 1782 application because "there is nothing to suggest that the German court would be affronted by [plaintiff's] recourse to U.S. discovery or would refuse to admit any evidence")).

Notably, district courts across the country "routinely allow applicants to obtain third-party Section 1782 discovery related to litigation pending in the United Kingdom." *See, e.g.*, *In re IKB Deutsche Industriebank AG*, No. 09-cv-7852, 2010 WL 1526070, at *4 (N.D. Ill. Apr. 8, 2010); *In re Application of Michael Wilson & Partners, Ltd.*, No. 06-cv-2575, 2007 WL 2221438, at *5 (D. Colo. July 27, 2007) (U.K. court would not be "hostile to [] discovery" under Section 1782.); *In re Application of Guy*, No. 19-mc-96, 2004 WL 1857580, at *2-3 (S.D.N.Y. Aug. 19, 2004) (There is no "reason to suppose that the government of the United Kingdom would disfavor granting Applicants relief under § 1782.").

Thus, the second *Intel* factor weighs heavily in favor of granting Legatum's Application because Legatum seeks discovery for use in litigation in the United Kingdom, and not only is there no "authoritative evidence" that the U.K. court would reject evidence obtained pursuant to Section 1782, but, as courts have repeatedly acknowledged, U.K. courts will accept such evidence. *See, e.g.*, *In re Deutsche Industriebank AG*, 2010 WL 1526070, at *4; *In re Michael Wilson & Partners*, 2007 WL 2221438, at *5; *In re Guy*, 2004 WL 1857580, at *2-3.

### C.   The Third *Intel* Factor Is Satisfied: Legatum's Request Does Not Attempt to Circumvent Foreign Proof-Gathering Restrictions.

The third *Intel* factor weighs in favor of discovery where, as here, there is no evidence in the record that an application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65; *In re Motorola Mobility*, 2012 WL 4936609, at *2; *In re Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *5.  Indeed, absent a bad faith attempt to undermine such restrictions or policies, this factor weighs in favor of allowing discovery even if the documents sought would not be discoverable in the foreign jurisdiction.  *Intel*, 542 U.S. at 260-63.

Here, Legatum is not aware of any restrictions on proof-gathering procedures that would

prohibit obtaining the discovery it seeks through its Application.  To the contrary, as noted above, U.S. courts have routinely granted applications under Section 1782 to obtain discovery of evidence for use in U.K. proceedings.  *See, e.g.*, *In re Deutsche Industriebank AG*, 2010 WL 1526070, at \*4; *In re Michael Wilson & Partners*, 2007 WL 2221438, at \*5; *In re Guy*, 2004 WL 1857580, at \*2-3. Simply put, there is no indication that any U.K. or U.S. policy would weigh against the discovery sought by Legatum, especially where Glassdoor has stymied Legatum's attempts to obtain the information this Application seeks without judicial intervention.  *See In re Application for Appointment of a Comm'r*, 2011 WL 2747302, at \*5.  Accordingly, the third *Intel* factor weighs heavily in favor of granting Legatum's Application.

### D. The Fourth *Intel* Factor Is Satisfied: Legatum's Request Is Not Unduly Burdensome.

The fourth *Intel* factor weighs in favor of discovery where, as here, an applicant's discovery request is not "unduly intrusive or burdensome," *Intel*, 542 U.S. at 265, as "determined by the Federal Rules of Civil Procedure," *In re Application of Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203, 2016 WL 6474224, at \*6 (N.D. Cal. Nov. 2, 2016) (citing *In re Letters Rogatory From Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994)).  Under the applicable ordinary discovery rules, "[d]iscovery 'is permitted if reasonably calculated to lead to the discovery of admissible evidence.'"  *HRC-Hainan Holding Co.*, 2020 WL 906719, at \*3 (quoting *Franklin v. Madden*, 586 F. App'x 431, 432 (9th Cir. 2014)).

Critically, as relevant here, courts have repeatedly held that this factor weighs in favor of granting a Section 1782 application where the applicant seeks discovery from a website operator—including Glassdoor—to reveal the identity of persons who used its site to allegedly infringe the applicant's rights.  *See, e.g.*, *In re Application for Appointment of a Comm'r*, 2011 WL 2747302, at \*1, 5 (granting application for discovery from WordPress.com "to identify the individual(s) who authored an anonymous blog on WordPress.com's blog-hosting service" and explaining that (1) "[t]he information requested is relevant to [the applicant's] allegations [against the anonymous blogger] and the identity of [the anonymous blogger] is otherwise unattainable, given that the relevant posts were made through Wordpress.com's servers" and (2) "the request is not unduly

1  intrusive or burdensome because it seeks to gather only identifying information for the accounts,

2  such as the names and addresses of the users"); *Digit. Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-

3  mc-80150, 2016 WL 5930275, at *2 (N.D. Cal. Oct. 12, 2016) (compelling Glassdoor to produce

4  "[d]ocuments sufficient to show the email address and IP address of the user who posted [an

5  allegedly defamatory review]" because (1) "[t]he email and IP addresses associated with the []

6  review are relevant to Petitioners' defamation claim based on that review" and (2) the request was

7  not unduly burdensome).

8     Here, Legatum's Application seeks narrow discovery from Glassdoor: (1) documents

9  sufficient to show the identity of or identifying information about the former employees who posted

10  the Disparaging Reviews; (2) information reflecting the number of web users that have viewed the

11  Disparaging Reviews; and (3) a one-hour deposition whereby a Glassdoor corporate representative

12  can authenticate its records.  This information—tending to show the identity of the persons who

13  posted the Disparaging Reviews—is not only relevant but absolutely necessarily for Legatum's

14  case in the United Kingdom.  Moreover, Legatum's Application does not broadly seek Glassdoor's

15  communications but only narrowly seeks documents sufficient to show the identities of the former

16  Legatum employees who posted the Defamatory Reviews.  Such requests are routinely approved

17  as not unduly burdensome.  *See, e.g.*, *Glassdoor, Inc.*, 2016 WL 5930275, at *2; *In re Application

18  for Appointment of a Comm'r*, 2011 WL 2747302, at *5; *In re Apple Retail UK Limited*, 2020 WL

19  3833392, at *4.[7]

20                **CONCLUSION**

21     For the foregoing reasons, Legatum respectfully requests that the Court grant its Application

22  and issue an Order authorizing the issuance of discovery.  A Proposed Order is attached to

23  Legatum's Application as **Exhibit A**.[8]

24

25

26  [7] Legatum's counsel will, of course, meet and confer with Glassdoor's counsel to discuss ways to obtain this discovery as efficiently and with as little burden as possible.

27  [8] A proposed subpoena to testify at a deposition in a civil action is attached to the Application as **Exhibit B** and a proposed subpoena to produce documents, information, or objects in a civil action

28  is attached to the Application as **Exhibit C**.

MEMORANDUM OF LAW IN SUPPORT OF LEGATUM'S *EX PARTE* § 1782 APPLICATION

Dated:      February 16, 2021                    BLANK ROME LLP


                                                 BY:   */s/ Julianna M. Simon*
                                                 Julianna M. Simon
                                                 *Attorney for Applicant Legatum Limited*


Dated:      February 16, 2021                    CLARE LOCKE LLP


                                                 By:   */s/ Daniel P. Watkins*
                                                 Daniel P. Watkins* (VA Bar No. 84592)
                                                 * *Pro Hac Vice* Application Forthcoming
                                                 *Attorney for Applicant Legatum Limited*

MEMORANDUM OF LAW IN SUPPORT OF LEGATUM'S *EX PARTE* § 1782 APPLICATION

1

## **FILER ATTESTATION**

2      In accordance of Civil L.R. 5-1(i)(3), I hereby certify that I have authorization to file this

3  document from the signatories above.

4      I declare under penalty of perjury under the laws of the United States of America and the

5  State of California that the foregoing is true and correct.  Executed on this 16th day of February,

6  2021 at Los Angeles, California.

7

8          _/s/ Julianna M. Simon_
          Julianna M. Simon

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF LEGATUM'S *EX PARTE* § 1782 APPLICATION